# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CHRIS A. MILNE, as Special Conservator of
JAIME ANTONIO FLORES
LANDAVERDE, protected person,

        Plaintiff,

v.

MOVE FREIGHT TRUCKING, LLC.,
JOSHUA FLORES, FEDEX GROUND
PACKAGE SYSTEM, INC., WESTERN
EXPRESS, INC. d/b/a WESTERN
LOGISTICS, JOSE LOPEZ, DAMARIS
PATRICIA LOPEZ-ALBERTO, and
WILSON AMILCAR CABRERA a/k/a
WILSON A. CABRERA YANES

        Defendants.

CIVIL ACTION FILE NO. 7:23-cv- 00432

**Consolidated with 7:23-cv-00612**


**JURY TRIAL DEMANDED**

---

## AMENDED COMPLAINT FOR DAMAGES

---

COMES NOW the Plaintiff, **CHRIS A. MILNE, as Special Conservator of JAIME ANTONIO FLORES LANDAVERDE**, **protected person,** by and through counsel and move for judgment against Defendants **MOVE FREIGHT TRUCKING, LLC, JOSHUA FLORES**, **FEDEX GROUND PACKAGE SYSTEM, INC.**, **WESTERN EXPRESS, INC. d/b/a WESTERN LOGISTICS**, **JOSE LOPEZ**, and **DAMARIS PATRICIA LOPEZ** in the sum of **Twenty-Five Million Dollars ($25,000,000.00) in compensatory damages** and **Fifty Million Dollars ($50,000,000.00) in punitive damages** with interest from September 25, 2021. In support of his Complaint, the Plaintiff states as follows:

## NATURE OF ACTION

1.

**JAIME ANTONIO FLORES LANDAVERDE** sustained severe and catastrophic personal injuries in a motor vehicle collision with a commercial motor vehicle (a tractor-trailer) that occurred at approximately 7:27 am on September 25, 2021, in Montgomery County, Virginia on Interstate 81 (herein the "**Subject Collision**").

2.

**Defendant JOSHUA FLORES** caused the **Subject Collision**, while he was acting within the course and scope of his employment or agency with **Defendant MOVE FREIGHT TRUCKING, LLC** (hereinafter "**Defendant MFT**"); **Defendant FEDEX GROUND PACKAGE SYSTEM, INC.** (hereinafter "**Defendant FEDEX GROUND**"); and/or **Defendant WESTERN EXPRESS, INC. d/b/a WESTERN LOGISTICS** (hereinafter "**Defendant WESTERN**").

## PARTIES, JURISDICTION, AND VENUE

3.

Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

4.

**JAIME ANTONIO FLORES LANDAVERDE** (hereinafter "**LANDAVERDE**") was severely and catastrophically injured in the **Subject Collision**.

5.

**LANDAVERDE** is a citizen of El Salvador who is currently domiciled in Massachusetts.

6.

Chris A. Milne was appointed as Special Conservator of **LANDAVERDE** by Suffolk Probate and Family Court and brings this civil action on behalf of **LANDAVERDE** (See Letters of Conservatorship for a Protected Person and Decree and Order of Appointment of Special Conservator attached as **Exhibit A**).

7.

Chris A. Milne is a citizen of the State of Massachusetts.

8.

Defendant **JOSHUA FLORES** (hereinafter "**Defendant FLORES**") was the driver of the tractor-trailer involved in the **Subject Collision**.

9.

**Defendant FLORES** is a citizen and resident of San Antonio, Texas.

10.

**Defendant FLORES** may be served with process at his residential address at 15123 Pioneer Sky, San Antonio, Texas, 78245. Once served, **Defendant FLORES** is subject to the jurisdiction and venue of this Court.

11.

**Defendant MFT** is a Texas limited liability company existing under the laws of the State of Texas with its principal place of business located at 9958 County Road 413, Navasota, Texas 77868.

12.

**Defendant MFT**, a limited liability corporation, has one member who is a citizen of the State of Texas.

13.

**Defendant MFT** may be served with process through its registered agent for service of process: Robert Walker, 709 Old Hunt Way, Herndon, Fairfax County, Virginia 20170. Once served, **Defendant MFT** is subject to the jurisdiction and venue of this Court.

14.

At the time of the **Subject Collision** and the filing of this legal action, **Defendant MFT** was and is engaged in business as a for hire interstate motor carrier transporting goods and did business in and through the State of Virginia.

15.

At all relevant times, **Defendant MFT** was a for hire motor carrier authorized by the United States Department of Transportation and the Federal Motor Carrier Safety Administration to operate for profit and transport goods in interstate commerce.

16.

At all times material hereto, **Defendant MFT** was and is a motor carrier authorized to operate in the State of Virginia for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation, or both.

17.

**Defendant FEDEX GROUND** is a Delaware Corporation with its principal place of business located at 1000 FedEx Drive, Coraopolis, Pennsylvania, 15108.

18.

**Defendant FEDEX GROUND** may be served with process through its registered agent for service of process: CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia,

23060-6802. Once served, **Defendant FEDEX GROUND** is subject to the jurisdiction and venue of this Court.

19.

At the time of the **Subject Collision** and the filing of this legal action, **Defendant FEDEX GROUND** was and is engaged in business as a broker, shipper, and for hire interstate motor carrier transporting goods and did business in and through the State of Virginia.

20.

At all relevant times, **Defendant FEDEX GROUND** was a for hire motor carrier authorized by the United States Department of Transportation and the Federal Motor Carrier Safety Administration to operate for profit and transport goods in interstate commerce.

21.

At all times material hereto, **Defendant FEDEX GROUND** was and is a motor carrier, broker, and shipper authorized to operate in the State of Virginia for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation, or both.

22.

**Defendant WESTERN** is a Tennessee Corporation existing under the laws of the State of Tennessee with its principal place of business located at 7135 Centennial Place, Nashville, Tennessee 37209-1033.

23.

**Defendant WESTERN** may be served with process through its registered agent for service of process: Robert G. Rothstein, 2240 Gallows Road, Vienna, Fairfax County, Virginia 22182. Once served, **Defendant WESTERN** is subject to the jurisdiction and venue of this Court.

24.

At the time of the **Subject Collision** and the filing of this legal action, **Defendant WESTERN** was and is engaged in business as a broker, shipper, and for hire interstate motor carrier transporting goods and did business in and through the State of Virginia.

25.

At all relevant times, **Defendant WESTERN** was a for hire motor carrier authorized by the United States Department of Transportation and the Federal Motor Carrier Safety Administration to operate for profit and transport goods in interstate commerce.

26.

At all times material hereto, **Defendant WESTERN** was and is a motor carrier, broker, and shipper authorized to operate in the State of Virginia for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation, or both.

27.

Defendant **JOSE LOPEZ** (hereinafter "**Defendant LOPEZ**") was the driver of the 2015 Ford Explorer involved in the **Subject Collision**.

28.

**Defendant LOPEZ** is a citizen and resident of Houston, Texas.

29.

**Defendant LOPEZ** may be served with process at his residential address at 11315 Fondren Road Apt. 1424, Houston, Texas 77035. Once served, **Defendant LOPEZ** is subject to the jurisdiction and venue of this Court.

30.

Defendant **DAMARIS PATRICIA LOPEZ-ALBERTO** (hereinafter "**Defendant ALBERTO**") was the owner of the 2015 Ford Explorer involved in the **Subject Collision**.

31.

**Defendant ALBERTO** a citizen and resident of Houston, Texas.

32.

**Defendant ALBERTO** may be served with process at his residential address at 11315 Fondren Road Apt. 1424, Houston, Texas. Once served, **Defendant ALBERTO** is subject to the jurisdiction and venue of this Court.

33.

**Defendant WILSON AMILCAR CABRERA a/k/a WILSON A. CABRERA YANES** (hereinafter "**Defendant CABRERA**") was the co-owner of the 2015 Ford Explorer involved in the **Subject Collision**.

34.

**Defendant CABRERA** is a citizen and resident of Brentwood, Maryland.

35.

**Defendant CABRERA** may be served with process at his residential address at 3905 39th Street, Brentwood, Maryland. Once served, **Defendant CABRERA** is subject to the jurisdiction and venue of this Court.

36.

This Court has subject matter jurisdiction over the claims asserted in this Complaint.

37.

Defendants are subject to the jurisdiction and venue of this Court.

38.

Venue is proper under 28 U.S.C. § 1390, as the events and occurrences made the basis of this action occurred in whole or in part in Virginia.

39.

**Plaintiff, LANDAVERDE** and Defendants are citizens of different states and the amount in controversy, excluding costs, attorney fees, or punitive damages exceeds $75,000, and accordingly this Court has jurisdiction over the parties to and the subject matter herein, pursuant to 28 U.SC. § 1332.

## GENERAL FACTS

40.

The following events took place at approximately 7:27 a.m. on September 25, 2021, in Montgomery County, Virginia on Interstate 81.

41.

On September 25, 2021**, Defendant FLORES** operated a tractor-trailer on Interstate 81 in Montgomery County.

42.

For an unknown reason, **Defendant FLORES** illegally and improperly parked the tractor-trailer on the right shoulder, with the rear of the trailer partially obstructing the acceleration lane coming out of a rest area. (See Exbibit "B," Virginia State Police Motor Carrier Safety Driver/Vehicle Examination Report)

43.

At the same time, **Defendant LOPEZ** operated a 2015 Ford Explorer on the same stretch of Interstate 81.

44.

**LANDAVERDE** was a passenger in 2015 Ford Explorer.

45.

The 2015 Ford Explorer was owned by **Defendant ALBERTO** and **Defendant CABRERA**.

46.

**Defendant LOPEZ** fell asleep behind the wheel of the 2015 Ford Explorer.

47.

The 2015 Ford Explorer drifted to the right and struck the left rear of the tractor-trailer that had been illegally and improperly parked on the right shoulder by **Defendant FLORES**.

48.

At the time of impact, **Defendant FLORES** was asleep in the sleeper berth of the tractor-trailer.

49.

**LANDAVERDE** suffered painful, catastrophic, and permanent injuries in the **Subject Collision**.

50.

**Defendant FLORES**'s decision to illegally park the tractor-trailer, and **Defendant LOPEZ's** conduct in falling asleep behind the wheel proximately caused the **Subject Collision** and resulting injuries and damages.

51.

**LANDAVERDE** did not cause or contribute to the cause of the **Subject Collision**.

52.

There is nothing that **LANDAVERDE** could have done to avoid the **Subject Collision** and resulting injuries.

53.

**Defendant MFT** is legally responsible for the injuries and damages caused by the **Subject Collision.**

54.

**Defendant MFT** has joint and several liability with the other defendants/joint tortfeasors alleged herein.

55.

The tractor-trailer being operated by **Defendant FLORES** was owned by **Defendant MFT**.

56.

At the time of the **Subject Collision**, the tractor-trailer being operated by **Defendant FLORES** was under the exclusive control of **Defendant MFT**.

57.

At the time of the **Subject Collision**, **Defendant FLORES** was operating the tractor-trailer under the motor carrier authority of **Defendant MFT**.

58.

On September 25, 2021, **Defendant FLORES** was hauling a load he picked up in Cypress, Texas that he was taking to Northampton, Pennsylvania for delivery (herein "the **Subject Load**"). (See Exbibit "B")

59.

Because of the location of the pick-up and delivery of the **Subject Load**, **Defendant WESTERN** and **Defendant FEDEX GROUND** anticipated travel of the **Subject Load** through much of Virginia.

60.

**Defendant WESTERN** and **Defendant FEDEX GROUND** regularly conduct business in the State of Virginia, including Fairfax and Montgomery Counties.

61.

On September 25, 2021, **Defendant FLORES** was operating the tractor-trailer in interstate commerce.

62.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** entered a contract to act as a broker and/or shipper to arrange for the delivery of the **Subject Load**.

63.

As part of its duties under this contract, **Defendant WESTERN** and/or **Defendant FEDEX GROUND** undertook to ensure the safe delivery of a load from Texas to Pennsylvania.

64.

As part of its duties under this contract, **Defendant WESTERN** and/or **Defendant FEDEX GROUND** undertook hiring a motor carrier to deliver the **Subject Load** in a safe and reasonable manner.

65.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** selected **Defendant MFT** as the appropriate motor carrier to perform the delivery of the **Subject Load** in a safe and reasonable manner.

66.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** hired **Defendant MFT** to perform the delivery of the **Subject Load**.

67.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** researched the safety history of **Defendant MFT** prior to selecting and hiring them to deliver the **Subject Load**.

68.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** entered into a contract with **Defendant MFT** to have them deliver the **Subject Load**.

69.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendant MFT's** tractor-trailer was dedicated to **Defendant WESTERN's** and/or **Defendant FEDEX GROUND's** exclusive use while **Defendant MFT** and **Defendant FLORES** were performing their duties under their agreement with **Defendant WESTERN** and/or **Defendant FEDEX GROUND** to deliver the **Subject Load**.

70.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** had control over the time, manner, and method of how **Defendant MFT** and/or **Defendant FLORES** were to pick up and deliver the **Subject Load**.

71.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendant FLORES** traveled to Cypress, Texas to pick-up the **Subject Load**.

72.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendants MFT** and **Defendant FLORES** were required to check in with and obtain load requirements from **Defendant WESTERN** and/or **Defendant FEDEX GROUND** prior to arriving at the pick-up location.

73.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, at various points during the delivery process **Defendant MFT** and **Defendant FLORES** were required to provide tracking updates to **Defendant WESTERN** and/or **Defendant FEDEX GROUND** through their electronic data interchange reporting system.

74.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendant MFT** and **Defendant FLORES** were required to provide a tracking update to **Defendant WESTERN** and/or **Defendant FEDEX GROUND** within a certain time after arriving at the pick-up location.

75.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendant MFT** and **Defendant FLORES** were required to provide periodic tracking updates to **Defendant WESTERN** and/or **Defendant FEDEX GROUND.**

76.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, **Defendant MFT** and **Defendant FLORES** were required to provide a tracking update to **Defendant WESTERN** and/or **Defendant FEDEX GROUND** within a certain amount of time after arriving at the drop-off location.

77.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, in order to be able to complete the delivery and receive payment **Defendant MFT** and **Defendant FLORES** were required to provide **Defendant WESTERN** and/or **Defendant FEDEX GROUND** with a document showing the in and out times from the pick-up facility that had to be signed by personnel from the facility.

78.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, to be able to complete the delivery and receive payment **Defendant MFT** and **Defendant FLORES** were required to provide **Defendant WESTERN** and/or **Defendant FEDEX GROUND** with a document showing the in and out times from the drop-off facility that had to be signed by personnel from the facility.

79.

At the direction of **Defendant WESTERN** and/or **Defendant FEDEX GROUND**, in order to be able to receive payment **Defendant MFT** was required to submit a bill including their name and the **Defendant WESTERN's** and/or **Defendant FEDEX GROUND's** load number on it.

80.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** paid **Defendant MFT** for delivering the **Subject Load**.

81.

**Defendant WESTERN** and/or **Defendant FEDEX GROUND** received payment from the shipper for brokering the **Subject Load**.

82.

**Defendant WESTERN** is legally responsible for the injuries and damages caused by the **Subject Collision**.

83.

**Defendant WESTERN** has joint and several liability with the other defendants/joint tortfeasors alleged herein.

84.

At the time of the **Subject Collision**, the tractor-trailer being operated by **Defendant FLORES** was under the exclusive control of **Defendant WESTERN.**

85.

At the time of the **Subject Collision**, **Defendant FLORES** was operating the tractor-trailer under the motor carrier authority of **Defendant WESTERN**.

86.

**Defendant WESTERN** provides third-party logistics services and acts as a freight broker/shipper.  **Defendant WESTERN** also is an authorized motor carrier, and sometimes acts as a motor carrier as that term is defined in 49 U.S.C. § 13102(14) and 49 C.F.R. § 390.5.

87.

At the time of the **Subject Collision**, **Defendant WESTERN** acted as a motor carrier for the load being hauled by **Defendant FLORES**.

88.

**Defendant FEDEX GROUND** is legally responsible for the injuries and damage caused by the **Subject Collision**.

89.

**Defendant FEDEX GROUND** has joint and several liability with the other defendants/joint tortfeasors alleged herein.

90.

**Defendant FEDEX GROUND** provides third-party logistics services and acts as a freight broker/shipper. **Defendant FEDEX GROUND** also is an authorized motor carrier, and sometimes acts as a motor carrier as that term is defined in 49 U.S.C. § 13102(14) and 49 C.F.R. § 390.5.

91.

At the time of the **Subject Collision**, the tractor-trailer being operated by **Defendant FLORES** was under the exclusive control of **Defendant FEDEX GROUND**.

92.

At the time of the **Subject Collision**, **Defendant FLORES** was operating the tractor-trailer under the motor carrier authority of **Defendant FEDEX GROUND**.

93.

At the time of the **Subject Collision**, **Defendant FEDEX GROUND** acted as a motor carrier for the load being hauled by **Defendant FLORES**.

94.

The tractor-trailer operated by **Defendant FLORES** was a commercial motor vehicle as defined under the Federal Motor Carrier Safety Regulations.

95.

The tractor-trailer operated by **Defendant FLORES** was a commercial motor vehicle as defined by Virginia law and trucking regulations.

96.

**Defendant MFT** and **Defendant FLORES** did not have an acceptable safety history prior to the **Subject Collision**.

97.

**Defendant MFT's** and **Defendant FLORES's** safety history prior to the **Subject Collision** was indicative that these Defendants posed an unreasonable risk of harm to the public.

98.

Defendants were negligent and their negligence, combined or individually, proximately caused the **Subject Collision** and the resulting injuries to **LANDAVERDE**.

99.

Each defendant/joint tortfeasor named herein has joint and several liability with the other defendants/joint tortfeasors alleged herein.

## COUNTS I AND II: NEGLIGENCE AND NEGLIGENCE PER SE OF DEFENDANT FLORES

100.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint for Damages as if each were fully set forth herein in their entirety.

101.

At all times material hereto, **Defendant FLORES** was a professional driver.

102.

At all times material to this action, **Defendant FLORES** was driving a commercial motor vehicle on a public highway in Montgomery County, Virginia.

103.

At all times material to this action, **Defendant FLORES** had a legal duty to adhere to all applicable Virginia traffic laws.

104.

At all times material to this action, **Defendant FLORES** had a legal duty to adhere to all applicable Virginia trucking safety regulations.

105.

At all times material to this action, **Defendant FLORES** had a legal duty to adhere to the Federal Motor Carrier Safety Regulations.

106.

At all times material to this action, **Defendant FLORES** had a legal duty to adhere to trucking industry standards.

107.

At all times material to this action, **Defendant FLORES** had a legal duty to operate the tractor-trailer in a safe and prudent manner.

108.

At all times material to this action, **Defendant FLORES** had a duty to act in accordance with his training as a professional commercial motor vehicle driver and so as not to endanger the lives and welfare of **LANDAVERDE** and the motoring public.

109.

**Defendant FLORES** in the operation of the tractor-trailer did the following among other things:

(a)    Illegally and improperly parked the tractor-trailer in the roadway;

(b)    Failed to drive defensively;

(c)    Violated federal hours of service requirements;

(d)    Failed to operate the tractor-trailer in a safe and prudent manner, thereby placing the lives and well-being of the public in general, and **LANDAVERDE** in particular, in grave danger;

(e)    Failed to adhere to safe driving principles expected of commercial drivers;

(f)    Failed to operate the tractor-trailer in accordance with generally accepted safety principles for commercial drivers and/or the commercial motor vehicle industry; and

(g)    Failed to operate the tractor-trailer in a safe and prudent manner in view of the conditions that existed at the time of the **Subject Collision**.

110.

**Defendant FLORES** breached his duties of care and was negligent in at least one or more of the respects described above.

111.

Additionally, **Defendant FLORES**'s conduct as described above or as will be shown in evidence at trial violated Virginia driving laws, the Federal Motor Carrier Safety Regulations and/or Virginia trucking regulations and each such violation constitutes negligence *per se*.

112.

**Defendant FLORES** was negligent and negligent *per se* in the ways described above and/or otherwise as will be shown by amendment or at trial.

113.

At all times material hereto, **Defendant FLORES** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE** in his failure to comply with the aforementioned breaches of duty.

114.

**Defendant FLORES's** negligent conduct proximately caused the collision at issue in this case.

115.

As a direct and proximate cause of **Defendant FLORES's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

116.

By virtue of **Defendant FLORES's** negligent conduct, **Defendant FLORES** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT III: *RESPONDEAT SUPERIOR* AGAINST
## DEFENDANT MFT

### 117.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

### 118.

At all times material hereto, **Defendant FLORES** was an employee of **Defendant MFT**.

### 119.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of his employment with **Defendant MFT**.

### 120.

At all times material hereto, **Defendant FLORES** was an agent of **Defendant MFT**.

### 121.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of his agency with **Defendant MFT**.

### 122.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle leased by **Defendant MFT**.

### 123.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle exclusively controlled by **Defendant MFT**.

### 124.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle with the permission of **Defendant MFT**.

125.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle in furtherance of the business and financial interests of **Defendant MFT**.

126.

**Defendant MFT** is liable for the negligent actions and omissions of **Defendant FLORES** pursuant to the doctrine of *respondeat superior* and/or the rules of agency.

127.

**Defendant MFT** is vicariously liable for any negligent actions and omissions committed by **Defendant FLORES** in connection with the **Subject Collision**.

128.

**Defendant MFT** is liable to **LANDAVERDE** for all damages sustained as a direct and proximate result of the negligence of **Defendant FLORES**.

129.

**Defendant FLORES's** negligent conduct proximately caused the collision at issue in this case.

130.

As a direct and proximate cause of **Defendant FLORES's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

131.

By virtue of **Defendant FLORES's** negligent conduct, **Defendant MFT** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT IV:  NEGLIGENCE OF DEFENDANT MFT

132.

Plaintiff incorporates all previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

133.

At all relevant times, **Defendant MFT** was a motor carrier as defined by the Federal Motor Carrier Safety Regulations.

134.

At all relevant times, **Defendant MFT** was a motor carrier as defined by Virginia law.

135.

At all relevant times, **Defendant MFT** had a legal duty to comply with the Federal Motor Carrier Safety Regulations.

136.

At all relevant times, **Defendant MFT** had a legal duty to comply with all applicable state trucking safety regulations.

137.

At all relevant times, **Defendant MFT** had a legal duty to comply with all trucking industry standards and practices.

138.

As an employer and Motor Carrier, **Defendant MFT** had a duty to act reasonably in connection with the hiring, qualifying, training, entrusting, supervising and retaining of **Defendant FLORES**.

139.

**Defendant MFT** breached the aforementioned duties and was negligent in connection with hiring, qualifying, training, entrusting, supervising and/or retaining of **Defendant FLORES**.

140.

At all times material hereto, **Defendant MFT** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE** in their failure to comply with the aforementioned breaches of duty.

141.

**Defendant MFT's** negligent conduct proximately caused the collision at issue in this case.

142.

As a direct and proximate cause of **Defendant MFT's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

143.

By virtue of **Defendant MFT's** negligent conduct, **Defendant MFT** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT V: *RESPONDEAT SUPERIOR* AGAINST DEFENDANT WESTERN

144.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

145.

At all times material hereto, **Defendant FLORES** was an employee of **Defendant WESTERN**.

146.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of his employment with **Defendant WESTERN**.

147.

At all times material hereto, **Defendant FLORES** was an agent of **Defendant WESTERN**.

148.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of his agency with **Defendant WESTERN**.

149.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle leased by **Defendant WESTERN**.

150.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle exclusively controlled by **Defendant WESTERN**.

151.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle with the permission of **Defendant WESTERN**.

152.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle in furtherance of the business and financial interests of **Defendant WESTERN**.

153.

**Defendant WESTERN** is liable for the negligent actions and omissions of **Defendant FLORES** pursuant to the doctrine of *respondeat superior* and/or the rules of agency.

154.

**Defendant WESTERN** is vicariously liable for any negligent actions and omissions committed by **Defendant FLORES** in connection with the **Subject Collision**.

155.

**Defendant WESTERN** is liable to **LANDAVERDE** for all damages sustained as a direct and proximate result of the negligence of **Defendant FLORES**.

156.

**Defendant FLORES's** negligent conduct proximately caused the collision at issue in this case.

157.

As a direct and proximate cause of **Defendant FLORES's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

158.

By virtue of **Defendant FLORES's** negligent conduct, **Defendant WESTERN** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT VI:  NEGLIGENCE OF DEFENDANT WESTERN

159.

Plaintiff incorporates all previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

160.

At all relevant times, **Defendant WESTERN** was a motor carrier as defined by the Federal Motor Carrier Safety Regulations.

161.

At all relevant times, **Defendant WESTERN** was a motor carrier as defined by Virginia law.

162.

At all relevant times, **Defendant WESTERN** was a broker as defined by the Federal Motor Carrier Safety Regulations.

163.

At all relevant times, **Defendant WESTERN** had a legal duty to act in a safe and reasonable manner in its undertakings including as a motor carrier, broker, and/or shipper.

164.

At all relevant times, **Defendant WESTERN** had a legal duty to comply with the Federal Motor Carrier Safety Regulations.

165.

At all relevant times, **Defendant WESTERN** had a legal duty to comply with all applicable State trucking safety regulations.

166.

At all relevant times, **Defendant WESTERN** had a legal duty to comply with all trucking industry standards and practices.

167.

As a broker, **Defendant WESTERN** had a duty to act reasonably in connection with the selecting, hiring, qualifying, training, entrusting, supervising, and retaining of **DEFENDANT MFT** and **Defendant FLORES**.

168.

**Defendant WESTERN** breached the aforementioned duties and was negligent in connection with the selecting, hiring, qualifying, training, entrusting, supervising and/or retaining of **Defendant MFT** and **Defendant FLORES**.

169.

At all times material hereto, **Defendant WESTERN** had a duty to take reasonable steps to make sure that the motor carrier it hired to deliver the **Subject Load** was a reasonably safe, sophisticated motor carrier, capable of delivering the load in a reasonably safe manner.

170.

**Defendant WESTERN** knew or should have known that **Defendant MFT** was not a safe motor carrier and was not a safe and reasonable choice to act as a motor carrier to pick up and deliver the **Subject Load**.

171.

**Defendant WESTERN** knew or should have known that **Defendant FLORES** was not a safe commercial vehicle driver and was not a safe and reasonable choice to act as a driver to pick up and deliver the **Subject Load**.

172.

Defendant **WESTERN** knew or should have known that **Defendant MFT** and **Defendant FLORES** had histories of non-compliance with safe driving practices, the Federal Motor Carrier Safety Regulations, and other trucking regulations, trucking industry standards, and other violations.

173.

Defendant **WESTERN** knew or should have known that **Defendant MFT** and **Defendant FLORES** had a history of unsafe driving, motor carrier, and/or trucking practices.

174.

Defendant **WESTERN** knew or should have known that **Defendant MFT** and **Defendant FLORES** posed a risk of unreasonable harm to the public.

175.

Defendant **WESTERN** knew or should have known that **Defendant MFT** was an inexperienced, non-rated motor carrier with limited experience and financially impaired.

176.

Defendant **WESTERN** breached its duties by hiring **Defendant MFT** and **Defendant FLORES** to deliver the **Subject Load**.

177.

Defendant **WESTERN** breached its duties by failing to take reasonable and prudent steps in the discharging of its duties to select a motor carrier to safely deliver the **Subject Load**.

178.

At all times material hereto, **Defendant WESTERN** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of Plaintiff in their failure to comply with the aforementioned breaches of duty.

179.

**Defendant WESTERN's** negligent conduct proximately caused the collision at issue in this case.

180.

As a direct and proximate cause of **Defendant WESTERN's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

181.

By virtue of **Defendant WESTERN's** negligent conduct, **Defendant WESTERN** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

### COUNT VII: JOINT ENTERPRISE, NEGLIGENT HIRING, TRAINING, ENTRUSTMENT, SUPERVISION, RETENTION, SHIPPING CLAIMS AGAINST DEFENDANT WESTERN

182.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

183.

In order to ensure public safety on the nation's highways, the Federal Motor Carrier Safety Administration (FMCSA) promulgates and enforces safety standards for commercial motor vehicles (CMVs), which are known as the Federal Motor Carrier Safety Regulations (FMCSRs).

184.

At all relevant times, **Defendant WESTERN** was a broker as defined by the FMCSRs.

185.

At all relevant times, **Defendant WESTERN** was a shipper as defined by the FMCSRs.

186.

Driving commercial motor vehicles can be dangerous and has the potential of causing injury and death, unless skillfully and carefully operated.

187.

As a result of the potential dangers, the federal government requires all interstate trucking companies to be licensed.

188.

The U.S. Department of Transportation, through the Federal Motor Carrier Safety Administration (FMCSA), issues the public authority to operate to the trucking company.

189.

Companies authorized by the FMCSA to use tractor-trailers on the road in interstate transportation receive a Department of Transportation ("DOT") number.

190.

The FMCSA both supervises and inspects interstate trucking companies it licenses and ensures that motor carriers comply with FMCSRs.

191.

**Defendant WESTERN's** business included the regular qualification and hiring of trucking companies to transport loads for **Defendant WESTERN**. At all relevant times, **Defendant WESTERN** had a legal duty to comply with all trucking and shipping industry standards and practices.

192.

At all relevant times, **Defendant WESTERN** had a legal duty to act in a safe and reasonable manner in its undertakings, including as a shipper.

193.

At all relevant times, **Defendant WESTERN** had a legal duty to take reasonable steps to make sure that any motor carrier it hires is qualified and safe including investigating any potential motor carrier's safety and compliance record through review of public records such as the safety rating information available on the Federal Motor Carrier Safety Administration's website.

194.

At all times material hereto, **Defendant WESTERN** had a duty to take reasonable steps to make sure that the motor carrier it hired to deliver its goods was a reasonably safe, sophisticated motor carrier, capable of delivering loads and operating commercial motor vehicles in a reasonably safe manner.

195.

It is the normal custom and practice for businesses such as **Defendant WESTERN**, when directly hiring trucking companies, to perform a safety analysis of the trucking company, including a review of the free FMCSA website and its published safety rating before hiring a trucking company.

196.

At all times material hereto, **Defendant WESTERN** knew that **Defendant MFT** was not a reasonably safe motor carrier and was not a safe and reasonable choice to act as a motor carrier to pick-up and deliver **Defendant WESTERN's** goods and/or to operate commercial motor vehicles in a reasonably safe manner.

197.

At all times material hereto, **Defendant WESTERN** failed to properly qualify and hire safe trucking companies when it hired **Defendant MFT**.

198.

At all times material hereto, **Defendant WESTERN** knew that **Defendant MFT** did not have proper rules, regulations, policies, and procedures in place to properly and legally operate commercial motor vehicles in Virginia.

199.

At all times material hereto, **Defendant WESTERN** required **Defendant MFT** to follow certain rules, regulations, policies, and procedures that it would otherwise not have to legally follow.

200.

At all times material hereto, **Defendant WESTERN** failed to supervise **Defendant MFT** and enforce its rules, regulations, policies, and procedures such that **Defendant MFT** was operating commercial vehicles in an unsafe manner and illegally.

201.

At all times material hereto, **Defendant WESTERN** had the capacity to determine the safety, fitness, and suitability of **Defendant MFT** to haul **Defendant WESTERN**'s goods.

202.

Based on information available to **Defendant WESTERN** related to **Defendant MFT,** **Defendant WESTERN** knew or should have known that **Defendant MFT** was deficient and non-compliant with the standards required by **Defendant WESTERN**.

203.

At all times material hereto, **Defendant WESTERN** knew or should have known that

**Defendant MFT** was not in compliance with the Federal Motor Carrier Safety Regulations required by **Defendant WESTERN** to be followed including failing to have a person assigned to check drivers' hours of service to ensure compliance; failing to have anyone trained to assure drivers are properly completing their hours of service; failing to prevent, supervise, or discipline drivers from violating the hours of service rules including the 14-hour rule; failing to have someone assigned to check driver inspection reports and compare them to roadside inspection reports; and failing to properly communicate the importance of pre- and post-trip vehicle inspections to their drivers.

204.

At all times material hereto, **Defendant WESTERN** knew or should have known that **Defendant MFT** posed a risk of unreasonable harm to the public including **LANDAVERDE**.

205.

At all times material hereto, **Defendant WESTERN** breached its duties by hiring **Defendant MFT** to deliver its goods.

206.

At all times material hereto, **Defendant WESTERN** breached its duties by failing to take reasonable and prudent steps in the discharging of its duties to select a motor carrier to safely operate commercial motor vehicles.

207.

At all times material hereto, **Defendant WESTERN** willfully, wantonly, recklessly, and/or negligently breached the duties it owed to the public and to **LANDAVERDE** by hiring **Defendant MFT** to deliver its goods and operate commercial motor vehicles in furtherance of **Defendant WESTERN's** business when **Defendant WESTERN** knew or should have known **Defendant MFT** posed an unreasonable risk of harm to the public as set forth above and was otherwise incompetent to

perform the duties of a motor carrier.

208.

When **Defendant MFT** accepted **Defendant WESTERN's** request for transportation of **Defendant WESTERN's** goods, **Defendant WESTERN** became the motor carrier and the effective or statutory employer of **Defendant FLORES**.

209.

At all times material hereto, **Defendants WESTERN**, **MFT**, and **FLORES** shared a common goal: to move goods for profit.

210.

At all times material hereto, the commercial motor vehicle in the **Subject Collisio**n was being used in furtherance of this shared goal.

211.

At all times material hereto, **Defendant WESTERN** had the ability to manage the transportation of its goods by **Defendant FLORES** and **Defendant MFT**.

212.

At all times material hereto, **Defendants FLORES** and **MFT** were acting within the scope and course of the business of **Defendant WESTERN**.

213.

At all times material hereto, **Defendant WESTERN** was acting by and through its employees and/or agents— **Defendant FLORES** and **Defendant MFT**—and **Defendant WESTERN** is responsible for the acts of those employees and agents.

214.

At all times material hereto, **Defendant WESTERN** was negligent in hiring and/or

contracting with **Defendant MFT**.

215.

At all times material hereto, **Defendant WESTERN** failed to conduct proper and required checks on the background of their employees and/or agents, **Defendant MFT** and **Defendant FLORES**.

216.

At all times material hereto, **Defendant WESTERN** was negligent, grossly negligent, reckless, and demonstrated willful and wanton disregard for the safety of **LANDAVERDE** in their failure to exercise ordinary care to determine the fitness of their employees and/or agents, in particular **Defendant MFT** and **Defendant FLORES** for the task of driving commercial motor vehicles in a reasonably safe manner and in compliance with the law.

217.

**Defendant WESTERN's** negligent conduct proximately caused the collision at issue in this case.

218.

As a direct and proximate result of Defendant **WESTERN**'s negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE, LANDAVERDE** sustained painful, permanent, and catastrophic injuries.

219.

As a direct and proximate result of **Defendant WESTERN's** gross neglect and conscious disregard of the risks attendant to the facts stated in this Complaint and their decision not to qualify or properly vet their motor carrier, not to train their agents and employees in their inherently dangerous work, and not to develop or enforce appropriate guidelines consistent with prevailing

industry safety standards and applicable law, **Defendant WESTERN** is liable for actual, exemplary, and punitive damages.

220.

As a direct and proximate cause of **Defendant WESTERN's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

221.

By virtue of **Defendant WESTERN's** negligent conduct, **Defendant WESTERN** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

**COUNT VIII: *RESPONDEAT SUPERIOR* AGAINST
DEFENDANT FEDEX**

222.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

223.

At all times material hereto, **Defendant FLORES** was an employee of **Defendant FEDEX**.

224.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of his employment with **Defendant FEDEX**.

225.

At all times material hereto, **Defendant FLORES** was an agent of **Defendant FEDEX**.

226.

At all times material hereto, **Defendant FLORES** was acting within the course and scope of

his agency with **Defendant FEDEX**.

227.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle leased by **Defendant FEDEX**.

228.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle exclusively controlled by **Defendant FEDEX**.

229.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle with the permission of **Defendant FEDEX**.

230.

At all times material hereto, **Defendant FLORES** was operating a commercial vehicle in furtherance of the business and financial interests of **Defendant FEDEX**.

231.

**Defendant FEDEX** is liable for the negligent actions and omissions of **Defendant FLORES** pursuant to the doctrine of *respondeat superior* and/or the rules of agency.

232.

**Defendant FEDEX** is vicariously liable for any negligent actions and omissions committed by **Defendant FLORES** in connection with the **Subject Collision**.

233.

**Defendant FEDEX** is liable to **LANDAVERDE** for all damages sustained as a direct and proximate result of the negligence of **Defendant FLORES**.

234.

**Defendant FLORES's** negligent conduct proximately caused the collision at issue in this case.

235.

As a direct and proximate cause of **Defendant FLORES's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

236.

By virtue of **Defendant FLORES's** negligent conduct, **Defendant FEDEX** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT IX:  NEGLIGENCE OF DEFENDANT FEDEX

237.

Plaintiff incorporates all previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

238.

At all relevant times, **Defendant FEDEX** was a motor carrier as defined by the Federal Motor Carrier Safety Regulations.

239.

At all relevant times, **Defendant FEDEX** was a motor carrier as defined by Virginia law.

240.

At all relevant times, **Defendant FEDEX** was a broker as defined by the Federal Motor Carrier Safety Regulations.

241.

At all relevant times, **Defendant FEDEX** had a legal duty to act in a safe and reasonable manner in its undertakings including as a motor carrier, broker, and/or shipper.

242.

At all relevant times, **Defendant FEDEX** had a legal duty to comply with the Federal Motor Carrier Safety Regulations.

243.

At all relevant times, **Defendant FEDEX** had a legal duty to comply with all applicable State trucking safety regulations.

244.

At all relevant times, **Defendant FEDEX** had a legal duty to comply with all trucking industry standards and practices.

245.

As a broker, **Defendant FEDEX** had a duty to act reasonably in connection with the selecting, hiring, qualifying, training, entrusting, supervising, and retaining of **DEFENDANT MFT** and **Defendant FLORES**.

246.

**Defendant FEDEX** breached the aforementioned duties and was negligent in connection with the selecting, hiring, qualifying, training, entrusting, supervising and/or retaining of **Defendant MFT** and **Defendant FLORES**.

247.

At all times material hereto, **Defendant FEDEX** had a duty to take reasonable steps to make sure that the motor carrier it hired to deliver the **Subject Load** was a reasonably safe, sophisticated

motor carrier, capable of delivering the load in a reasonably safe manner.

248.

Defendant **FEDEX** knew or should have known that **Defendant MFT** was not a safe motor carrier and was not a safe and reasonable choice to act as a motor carrier to pick up and deliver the **Subject Load**.

249.

Defendant **FEDEX** knew or should have known that **Defendant FLORES** was not a safe commercial vehicle driver and was not a safe and reasonable choice to act as a driver to pick up and deliver the **Subject Load**.

250.

Defendant **FEDEX** knew or should have known that **Defendant MFT** and **Defendant FLORES** had histories of non-compliance with safe driving practices, the Federal Motor Carrier Safety Regulations, and other trucking regulations, trucking industry standards, and other violations.

251.

Defendant **FEDEX** knew or should have known that **Defendant MFT** and **Defendant FLORES** had a history of unsafe driving, motor carrier, and/or trucking practices.

252.

Defendant **FEDEX** knew or should have known that **Defendant MFT** was an inexperienced, non-rated motor carrier with limited experience and financially impaired.

253.

Defendant **FEDEX** knew or should have known that **Defendant MFT** and **Defendant FLORES** posed a risk of unreasonable harm to the public.

254.

**Defendant FEDEX** breached its duties by hiring **Defendant MFT** and **Defendant FLORES** to deliver the **Subject Load**.

255.

**Defendant FEDEX** breached its duties by failing to take reasonable and prudent steps in the discharging of its duties to select a motor carrier to safely deliver the **Subject Load**.

256.

At all times material hereto, **Defendant FEDEX** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE i**n their failure to comply with the aforementioned breaches of duty.

257.

**Defendant FEDEX's** negligent conduct proximately caused the collision at issue in this case.

258.

As a direct and proximate cause of **Defendant FEDEX's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

259.

By virtue of **Defendant FEDEX's** negligent conduct, **Defendant FEDEX** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNT X: JOINT ENTERPRISE, NEGLIGENT HIRING, TRAINING, ENTRUSTMENT, SUPERVISION, RETENTION, SHIPPING CLAIMS AGAINST FEDEX

260.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs as if each were fully set forth herein in their entirety.

261.

In order to ensure public safety on the nation's highways, the Federal Motor Carrier Safety Administration (FMCSA) promulgates and enforces safety standards for commercial motor vehicles (CMVs), which are known as the Federal Motor Carrier Safety Regulations (FMCSRs).

262.

At all relevant times, **Defendant FEDEX** was a broker as defined by the Federal Motor Carrier Safety Regulations (FMCSRs).

263.

At all relevant times, **Defendant FEDEX** was a shipper as defined by the Federal Motor Carrier Safety Regulations (FMCSRs).

264.

Driving commercial motor vehicles can be dangerous and has the potential of causing injury and death, unless skillfully and carefully operated.

265.

As a result of the potential dangers, the federal government requires all interstate trucking companies to be licensed.

266.

The U.S. Department of Transportation, through the Federal Motor Carrier Safety Administration (FMCSA), issues the public authority to operate to the trucking company.

267.

Companies authorized by the FMCSA to use tractor-trailers on the road in interstate transportation receive a Department of Transportation ("DOT") number.

268.

The FMCSA both supervises and inspects interstate trucking companies it licenses and ensures that motor carriers comply with FMCSRs.

269.

**Defendant FEDEX's** business included the regular qualification and hiring of trucking companies to transport loads for **Defendant FEDEX**. At all relevant times, **Defendant FEDEX** had a legal duty to comply with all trucking and shipping industry standards and practices.

270.

At all relevant times, **Defendant FEDEX** had a legal duty to act in a safe and reasonable manner in its undertakings, including as a shipper.

271.

At all relevant times, **Defendant FEDEX** had a legal duty to take reasonable steps to make sure that any motor carrier it hires is qualified and safe including investigating any potential motor carrier's safety and compliance record through review of public records such as the safety rating information available on the Federal Motor Carrier Safety Administration's website.

272.

At all times material hereto, **Defendant FEDEX** had a duty to take reasonable steps to make

sure that the motor carrier it hired to deliver its goods was a reasonably safe, sophisticated motor carrier, capable of delivering load and operating commercial motor vehicles in a reasonably safe manner.

273.

It is the normal custom and practice for businesses such as **Defendant FEDEX**, when directly hiring trucking companies, to perform a safety analysis of the trucking company, including a review of the free FMCSA website and its published safety rating before hiring a trucking company.

274.

At all times material hereto, **Defendant FEDEX** knew that **Defendant MFT** was not a reasonably safe motor carrier and was not a safe and reasonable choice to act as a motor carrier to pick-up and deliver **Defendant FEDEX's** goods and/or to operate commercial motor vehicles in a reasonably safe manner.

275.

At all times material hereto, **Defendant FEDEX** failed to properly qualify and hire safe trucking companies when it hired **Defendant MFT**.

276.

At all times material hereto, **Defendant FEDEX** knew that **Defendant MFT** did not have proper rules, regulations, policies, and procedures in place to properly and legally operate commercial motor vehicles in Virginia.

277.

At all times material hereto, **Defendant FEDEX** required **Defendant MFT** to follow certain rules, regulations, policies, and procedures that it would otherwise not have to legally follow.

278.

At all times material hereto, **Defendant FEDEX** failed to supervise **Defendant MFT** and enforce its rules, regulations, policies, and procedures such that **Defendant MFT** was operating commercial vehicles in an unsafe manner and illegally.

279.

At all times material hereto, **Defendant FEDEX** had the capacity to determine the safety, fitness, and suitability of **Defendant MFT** to haul **Defendant FEDEX**'s goods.

280.

Based on information available to **Defendant FEDEX** related to **Defendant MFT, Defendant FEDEX** knew or should have known that **Defendant MFT** was deficient and non-compliant with the standards required by **Defendant FEDEX**.

281.

At all times material hereto, **Defendant FEDEX** knew or should have known that **Defendant MFT** was not in compliance with the Federal Motor Carrier Safety Regulations required **Defendant FEDEX** to be followed including failing to have a person assigned to check drivers hours of service to ensure compliance; failing to have anyone trained to assure drivers are properly completing their hours of service; failing to prevent, supervise, or discipline drivers from violating the hours of service rules including the 14-hour rule; failing to have someone assigned to check driver inspection reports and compare them to roadside inspection reports; and failing to properly communicate the importance of pre- and post-trip vehicle inspections to their drivers.

282.

At all times material hereto, **Defendant FEDEX** knew or should have known that **Defendant MFT** posed a risk of unreasonable harm to the public including **LANDAVERDE**.

283.

At all times material hereto, **Defendant FEDEX** breached its duties by hiring **Defendant MFT** to deliver its goods.

284.

At all times material hereto, **Defendant FEDEX** breached its duties by failing to take reasonable and prudent steps in the discharging of its duties to select a motor carrier to safely operate commercial motor vehicles.

285.

At all times material hereto, **Defendant FEDEX** willfully, wantonly, recklessly, and/or negligently breached the duties it owed to the public and to **LANDAVERDE** by hiring **Defendant MFT** to deliver its goods and operate commercial motor vehicles in furtherance of **Defendant FEDEX's** business when **Defendant FEDEX** knew or should have known **Defendant MFT** posed an unreasonable risk of harm to the public as set forth above and was otherwise incompetent to perform the duties of a motor carrier.

286.

When **Defendant MFT** accepted **Defendant FEDEX's** request for transportation of **Defendant FEDEX's** goods, **Defendant FEDEX** became the motor carrier and the effective or statutory employer of **Defendant FLORES**.

287.

At all times material hereto, **Defendants FEDEX**, **MFT**, and **FLORES** shared a common goal: to move goods for profit.

288.

At all times material hereto, the commercial motor vehicle in the **Subject Collision** was being

used in furtherance of this shared goal.

289.

At all times material hereto, **Defendant FEDEX** had the ability to manage the transportation of its goods by **Defendant FLORES** and **Defendant MFT**.

290.

At all times material hereto, **Defendants FLORES** and **MFT** were acting within the scope and course of the business of **Defendant FEDEX**.

291.

At all times material hereto, **Defendant FEDEX** was acting by and through its employees and/or agents—**Defendant FLORES** and **Defendant MFT**—and **Defendant FEDEX** is responsible for the acts of those employees and agents.

292.

At all times material hereto, **Defendant FEDEX** was negligent in hiring and/or contracting with **Defendant MFT**.

293.

At all times material hereto, **Defendant FEDEX** failed to conduct proper and required checks on the background of their employees and/or agents, **Defendant MFT** and **Defendant FLORES**.

294.

At all times material hereto, **Defendant FEDEX** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of the **LANDAVERDE** in their failure to exercise ordinary care to determine the fitness of their employees and/or agents, in particular **Defendant MFT** and **Defendant FLORES** for the task of driving commercial motor vehicles in a reasonably safe manner and in compliance with the law.

295.

**Defendant FEDEX's** negligent conduct proximately caused the collision at issue in this case.

296.

As a direct and proximate cause of **Defendant FEDEX's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

297.

By virtue of **Defendant FEDEX's** negligent conduct, **Defendant FEDEX** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

## COUNTS XI AND XII:  NEGLIGENCE AND NEGLIGENCE PER SE OF DEFENDANT LOPEZ

298.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint for Damages as if each were fully set forth herein in their entirety.

299.

At all times material hereto, **Defendant LOPEZ** was the driver of the 2015 Ford Explorer involved in the **Subject Collision**.

300.

At all times material to this action, **Defendant LOPEZ** had a legal duty to adhere to all applicable Virginia traffic laws.

301.

At all times material to this action, **Defendant LOPEZ** had a legal duty to operate the 2015 Ford Explorer in a safe and prudent manner.

302.

**Defendant LOPEZ** in the operation of the 2015 Ford Explorer did the following among other things:

a. Fell asleep while driving the 2015 Ford Explorer;

b. Operated the vehicle in reckless disregard for the safety of others;

c. Failed to keep the vehicle under proper control;

d. Failed to maintain his lane of travel;

e. Failed to operate the 2015 Ford Explorer in a safe and prudent manner, thereby placing the lives and well-being of the public in general, and **LANDAVERDE** in particular, in grave danger; and

f. Failed to operate the 2015 Ford Explorer in a safe and prudent manner in view of the conditions that existed at the time of the **Subject Collision**.

303.

**Defendant LOPEZ** breached his duties of care and was negligent in at least one or more of the respects described above.

304.

Additionally, **Defendant LOPEZ**'s conduct as described above or as will be shown in evidence at trial violated Virginia driving laws and each such violation constitutes negligence *per se*.

305.

**Defendant LOPEZ** was negligent and negligent *per se* in the ways described above and/or otherwise as will be shown by amendment or at trial.

306.

**Defendant LOPEZ's** negligent conduct proximately caused the collision at issue in this case.

307.

At all times material hereto, **Defendant LOPEZ** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE** in their failure to comply with the aforementioned breaches of duty.

308.

As a direct and proximate cause of **Defendant LOPEZ's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

309.

By virtue of **Defendant LOPEZ's** negligent conduct, **Defendant LOPEZ** is liable to **LANDAVERDE** for all damages allowed under the law and as set forth more fully in the Damages section below.

### <u>COUNTS XIII:  NEGLIGENT ENTRUSTMENT AGAINST DEFENDANT ALBERTO AND DEFENDANT CABRERA</u>

310.

Plaintiff incorporates herein by reference the allegations of the previous paragraphs of this Complaint for Damages as if each were fully set forth herein in their entirety.

311.

At all times material hereto, **Defendant ALBERTO and Defendant CABRERA** were the owners of the 2015 Ford Explorer involved in the **Subject Collision**.

312.

**Defendant ALBERTO and Defendant** arranged for the transportation of passengers from Texas to Virginia and Massachusetts in their 2015 Ford Explorer and entrusted said vehicle to **Defendant Flores** for this trip.

313.

At all times material hereto, **Defendant ALBERTO and Defendant CABRERA** knew or should have known **Defendant Flores** would be traveling through Virginia on a trip transporting passengers from Texas to Massachusetts on the date in question.

314.

In connection with the aforesaid negligence of **Defendant LOPEZ**, **Defendant ALBERTO** and **Defendant CABRERA** were negligent in that they—though their express or implied permission, entrusted their 2015 Ford Explorer to **Defendant LOPEZ** who they knew or should have known was an unfit driver who was likely to cause injury to others.

315.

At all times material hereto, **Defendant ALBERTO and Defendant CABRERA** acted with negligence, gross negligence, recklessness, and willful and wanton disregard for the safety of **LANDAVERDE** in their failure to comply with the aforementioned breaches of duty.

316.

As a direct and proximate result of **Defendants LOPEZ's, CABRERA's** and **ALBERTO's** negligent conduct, **LANDAVERDE** suffered pre-impact terror and severe injuries that resulted in his pain and suffering.

317.

By virtue of **Defendants LOPEZ's, CABRERA's** and **ALBERTO's** negligent conduct,

**Defendant ALBERTO and Defendant CABRERA** are liable to **Plaintiff** for all damages

allowed under the law and as set forth more fully in the Damages section below.

**COUNT XIV:  RECKLESSNESS OF ALL DEFENDANTS AND PUNITIVE DAMAGES**

318.

Plaintiff incorporates all previous paragraphs of this Complaint as if each were fully set

forth herein in their entirety.

319.

Defendants' actions and omissions as described herein amount to willful and wanton

negligence and demonstrate a conscious disregard of another's rights, or reckless indifference to

the consequences of their actions.

320.

The facts herein are egregious and shock the conscience.

321.

By virtue of the reckless conduct herein, all Defendants are liable to **LANDAVERDE** for

all damages allowed under the law and punitive damages as set forth more fully in the sections

below.

**DAMAGES**

322.

 Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

allegation asserted in the preceding and following paragraphs, including each and every factual

and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopts and re-alleges each

such allegation.

323.

As a direct and proximate result of the aforementioned acts and omissions of the Defendants, and each of them, **LANDAVERDE** incurred the following damages:

    a.  Bodily injuries, permanent in nature, which have affected his life;

    b.  Past, present and future physical pain and mental anguish;

    c.  Disfigurement and/or deformity coupled with associated humiliation and embarrassment;

    d.  Past, present and future inconvenience;

    e.  Past, present and future lost earnings, and a lessening of earning capacity;

    f.  Personal, social and financial limitations resulting from the injuries sustained by **LANDAVERDE**; and

    g.  Other damages allowable at law, including medical expenses incurred in the past, present and future, and attorneys' fees and costs.

## **JURY DEMAND**

324.

Plaintiff hereby demands a trial with a jury on all issues in the cause, including liability and damages.

## **PRAYER FOR RELIEF**

325.

WHEREFORE, Plaintiff moves this Court for Judgement against all Defendants named herein, jointly and severally, in the sum of **TWENTY-FIVE MILLION DOLLARS ($25,000,000.00) in compensatory damages** and **FIFTY MILLION DOLLARS**

**($50,000,000.00)** in punitive damages, together with the cost of this action, and pre-judgment interest, and any and all such other and further legal and equitable relief as the Court deems necessary, just, and proper.

This 13th day of October 2023.

**FRIED GOLDBERG LLC**

**JOSEPH A. FRIED**
GEORGIA BAR NUMBER 277251
**BRIANT G. MILDENHALL**
GEORGIA BAR NUMBER 790507
**NATHAN A. GAFFNEY**
GEORGIA BAR NUMBER 940686
*ADMITTED PRO HAC VICE*

THREE ALLIANCE CENTER
3550 Lenox Road, N.E., Suite 1500
Atlanta, GA 30326
bmildenhall@friedgoldberg.com

**ROWE WEINSTEIN & SOHN, PLLC**

/s/ Jeremy C. Huang
Robinson R. Rowe, VSB 98607
Christina E. Shin, VSB 92750
Jeremy C. Huang, VSB 76861
Alexander Bush, VSB 93105
* *ADMISSION TO WDVA PENDING*

7010 Little River Turnpike, Suite 300
Annandale, VA 22003
P : 703-354-1111
rrowe@rowepllc.com
jhuang214@gmail.com
abush@rowepllc.com

*ATTORNEYS FOR PLAINTIFFS*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day electronically submitted the foregoing

**PLAINTIFF'S AMENDED COMPLAINT** using the CM/ECF system which will automatically

send electronic mail notification of such filing to counsel of record who are CM/ECF participants,

as follows:

Sean Workowski
Nathan Schnetzler
Firth Anderson + Peake
29 Franklin Road
Roanoke, Virginia 24011
sworkowski@faplawfirm.com
nschnetzler@faplawfirm.com
*Attorneys for Defendants Move Freight Trucking, LLC and Joshua Flores*

Ashley W. Winsky
919 E. Main Street, Suite 1130
Richmond, VA 23219
Winsky@gentrylocke.com
Alicha M. Grubb
Aidan C. Williams
Gentry Locke
10 Franklin Road S.E., Suite 900
Roanoke, VA 24011
Grubb@gentrylocke.com
awilliams@gentrylocke.com
*Attorneys for Defendants FedEx Ground Package System, Inc.*
*and Western Express Inc, d/b/a Western Logistics*

John L. Cooley, Esq.
Law Office of Cooley and Associates PLC
40 British Woods Dr., Suite 101
PO Box 19687
Roanoke VA 24019
Telephone: 540-339-3300
Facsimile: 540-323-1745
Email: jlcooley@cooleyfirm.com
*Counsel for Defendant*
*Damaris Patricia Lopez-Alberto*

This the 13th day of October 2023.

                                                    **FRIED GOLDBERG LLC**

                                                    */s/ Briant G. Mildenhall*
THREE ALLIANCE CENTER                               **JOSEPH A. FRIED**
3550 Lenox Road, N.E., Suite 1500                   GEORGIA BAR NUMBER 277251
Atlanta, GA 30326                                   **BRIANT G. MILDENHALL**
P: 404-591-1800                                     GEORGIA BAR NUMBER 790507
E: JOE@FRIEDGOLDBERG.COM                            **NATHAN A. GAFFNEY**
    BMILDENHALL@FRIEDGOLDBERG.COM                    GEORGIA BAR NUMBER 940686
    NATHAN@FRIEDGOLDBERG.COM                         *ADMITTED PRO HAC VICE*
                                                    **ATTORNEYS FOR PLAINTIFF**