IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRIS A. MILNE, as Special Conservator of JAIME ANTONIO FLORES LANDAVERDE, Protected Person, | ) ) ) ) Case No. 7:23-cv-432 ) |
| Plaintiff, | ) ) By: Michael F. Urbanski |
| v. | ) Chief United States District Judge ) |
| MOVE FREIGHT TRUCKING, LLC, ET AL., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case arises out of a motor vehicle accident on Interstate 81 in Montgomery County, Virginia, on September 25, 2021. The Second Amended Complaint ("SAC")[1] alleges that Jaime Antonio Flores Landaverde sustained personal injuries as a passenger in a 2015 Ford Explorer operated by Jose Lopez. Plaintiff Chris A. Milne, as Landaverde's special conservator, alleges that Lopez fell asleep and struck a tractor-trailer parked on the shoulder of Interstate 81. Defendant Joshua Flores operated the tractor-trailer on behalf of Move Freight Trucking, LLC ("MFT"). The SAC alleges alternatively that Flores was an employee of MFT, FedEx Ground Package System, Inc. ("FedEx Ground"), or Western Express, Inc. d/b/a Western Logistics ("Western Express") acting within the scope of his employment, and that these entities, as motor carriers, brokers, and/or shippers, were negligent in the hiring of

---

[1] In accordance with the court's January 5, 2024, order, ECF No. 66, Plaintiff Chris A. Milne filed a Second Amended Complaint on January 16, 2024, ECF No. 67. The SAC differs from the First Amended Complaint, ECF No. 40, in only one respect: the SAC adds the allegation that Milne registered his Massachusetts conservatorship "in the Circuit Court of Montgomery County[, Virginia] on November 29, 2023." Second Am. Compl., ECF No. 67, at ¶ 7; ECF No. 67-2.

1

MFT and Flores. The SAC also alleges negligent entrustment against the owners of the 2015 Ford Explorer, Damaris Patricia Lopez-Alberto and Wilson Amilcar Cabrera a/k/a Wilson A. Cabrera Yanes.

This nascent case has already accumulated a significant procedural history. Defendants FedEx Ground, Flores, MFT, Western Express, and Lopez-Alberto filed separate motions to dismiss the Initial Complaint.[2] ECF Nos. 27 (FedEx Ground), 28 (Flores and MFT), 31 (Western Express), 38 (Lopez-Alberto). In response to the court's September 29, 2023, order, ECF No. 37, Milne subsequently filed a First Amended Complaint, ECF No. 40, and responded in opposition to defendants' motions, ECF Nos. 41, 42. FedEx Ground, Western Express, MFT, and Lopez-Alberto filed new motions to dismiss the First Amended Complaint. ECF Nos. 43 (FedEx Ground), 45 (Western Express), 48 (MFT), 52 (Lopez-Alberto). Milne responded in opposition by incorporating the arguments he previously made against defendants' first round of motions. ECF No. 59. The court held argument on November 2, 2023, on all pending matters.

By memorandum opinion and order entered January 5, 2024, the court dismissed Milne's First Amended Complaint without prejudice and granted him leave to file a Second Amended Complaint as a supplemental pleading under Federal Rule of Civil Procedure 15(d). ECF Nos. 65, 66. The court also denied as moot defendants' motions to dismiss the Initial

---

[2] There is no indication that defendants Lopez or Yanes have been served in this case or Milne's separate civil action against Yanes, Milne v. Yanes, 7:23-cv-00612 (W.D. Va. filed Sept. 22, 2023). The court consolidated these two cases for purposes of pre-trial issues and discovery. Order, ECF No. 37.

Complaint but left their second round of motions pending. Order, ECF No. 66, at 2. This memorandum opinion addresses the outstanding issues from those motions.[3]

I.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, see Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual

---

[3] In the January 5 order, the court informed the parties that "[i]f a Second Amended Complaint is filed, defendants need not respond to the pleading until further directed by order of this court." Order, ECF No. 66, at 1–2. Milne filed the SAC on January 16, 2024. ECF No. 67. Flores and MFT then filed answers on January 30, 2024, ECF Nos. 68 (Flores), 69 (MFT), and FedEx Ground and Western Express filed new motions to dismiss on February 6, 2024, ECF Nos. 70 (FedEx Ground), 72 (Western Express). The court will address these new motions once the parties fully brief them.

3

allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

The court will first address Lopez-Alberto's motion to dismiss Count XIII of the SAC. Then the court will discuss MFT's motion to dismiss Count IV.[4] Finally, the court will turn to the arguments raised by FedEx Ground and Western Express in their motions.

II.

As the co-owner of the vehicle residing in Texas, Lopez-Alberto asserts that the facts alleged are insufficient to state a claim of negligent entrustment against her. The SAC identifies Lopez-Alberto as a Houston, Texas, resident who owned the 2015 Ford Explorer. Second Am. Compl. ¶¶ 32–33. In Count XIII, Milne alleges that Lopez-Alberto and co-owner Cabrera "entrusted their 2015 Ford Explorer to Defendant Lopez who they knew or should have known was an unfit driver who was likely to cause injury to others." Id. at ¶ 316. The SAC also alleges that Lopez-Alberto and Cabrera arranged for the transportation of passengers

---

[4] MFT and Flores jointly filed a motion to dismiss the Initial Complaint at the outset of this case. ECF No. 28. The court denied this motion as moot in its January 5 order, ECF No. 66, at 2, and Flores did not file another motion to dismiss in addition to his answer, ECF No. 68. Flores did not join MFT's motion to dismiss Count IV. ECF No. 48.

4

from Texas to Massachusetts and knew or should have known that the trip would travel through Virginia. Id. at ¶ 314–15. The SAC does not contain any other factual allegations against Lopez-Alberto.

Under Virginia law, a claim of negligent entrustment requires that "the owner knew, or had reasonable cause to know, that he was entrusting his car to an unfit driver likely to cause injury to others." Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972).

> Typically, the Supreme Court of Virginia allows negligent entrustment claims "only where the owner had notice of some physical or mental defect" of the entrustee. Lester [v. SMC Transport, LLC, No. 7:15cv00665, 2016 WL 4595696], at *5 [(W.D. Va. Sept. 2, 2016)]; Darnell v. Lloyd, No. 4:14cv94, 2016 WL 1464564, at *3 (E.D. Va. Apr. 13, 2016). "Furthermore, in order to impose liability upon the owner, the plaintiff must prove that the negligent entrustment . . . was a proximate cause of the accident." Turner v. Lotts, 244 Va. 554, 422 S.E.2d 765, 767 (1992).

McKeown v. Rahim, 446 F. Supp. 3d 69, 82 (W.D. Va. 2020). The SAC fails to allege any facts from which a plausible claim of negligent entrustment may lie. As such, the SAC fails to state a plausible claim of negligent entrustment against Lopez-Alberto. Nor are there sufficient facts alleged to establish personal jurisdiction over Lopez-Alberto in Virginia. Accordingly, the court will **GRANT** the motion to dismiss filed by Lopez-Alberto as to Count XIII.[5] Should discovery reveal facts sufficient to establish a plausible basis for a negligent entrustment claim against Lopez-Alberto as to which personal jurisdiction in Virginia may be founded, Milne may move for leave to amend his complaint to revive this claim.

---

[5] As Count XIII is the only count pending against Lopez-Alberto, she will be dismissed as a party defendant in this case.

## III.

Count IV of the SAC alleges that MFT "was negligent in connection with hiring, qualifying, training, entrusting, supervising and/or retaining of Defendant Flores." Second Am. Compl. ¶ 141. In paragraphs 43 and 44, Landaverde alleges that Flores operated a tractor-trailer on Interstate 81 in Montgomery County, and that "[f]or an unknown reason, Defendant Flores illegally and improperly parked the tractor-trailer on the right shoulder, with the rear of the trailer partially obstructing the acceleration lane coming out of the rest area." The facts alleged in the SAC are insufficient to state a plausible claim of negligent entrustment against MFT.

Nor are these scant allegations sufficient to state a plausible claim for negligent hiring. The negligent hiring "cause of action is based upon the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employee is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." Se. Apartments Mgmt., Inc. v. Jackman, 257 Va. 256, 260, 513 S.E.2d 395, 397 (1999). "Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of employment, it should have been foreseeable that the hired individual posed a threat of injury to others." Id. (quoting Ponticas v. K.M.S. Invs., 331 N.W2d 907, 911 (Minn. 1983)). The SAC alleges only that Flores operated a tractor-trailer in Virginia and unlawfully parked it on the shoulder of Interstate 81. There are no facts alleged that MFT had knew or had reason

6

to know that hiring Flores as truck driver posed an unreasonable risk of harm to others. As such, the facts alleged fail to state a claim for negligent hiring.

Likewise, these facts do not support a claim for negligent retention. "This cause of action is based upon the principle that an employer . . . is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm" others. Se. Apartments Mgmt., 257 Va. at 260-61, 513 S.E.2d at 397. The SAC alleges no facts that MFT knew or had reason to know that retaining Flores as a truck driver was dangerous and likely to harm others.

Finally, Virginia law does not recognize independent tort claims for negligent supervision or training, McDonald v. Betsinger, No. 7:15cv0477, 2016 WL 958737, *3 (W.D. Va. Mar. 8, 2016). Even if Virginia law recognized such a claim, the SAC contains no facts to support the conclusory allegation that MFT was somehow deficient in its supervision or training of Flores. Finally, the SAC also alleges that MFT was negligent in "qualifying" Flores, but no facts are alleged to provide context or factual support for this conclusory allegation.

Accordingly, Count IV will be dismissed. Should discovery reveal facts sufficient to establish a plausible basis for a negligent entrustment, hiring, or retention claim against MFT, Milne may move for leave to amend his complaint to revive this claim.

IV.

The SAC contains six substantive counts against Western Express and FedEx Ground. In Counts V and VIII, Milne alleges that Western Express and FedEx Ground employed Flores, the driver of the tractor-trailer, and that Flores was acting within the scope of his employment. In Counts VI and IX, Milne alleges that Western Express and FedEx Ground,

as motor carrier, broker and/or shipper were negligent in hiring, retaining and entrusting MFT and Flores to deliver the load from Cypress, Texas, to Northampton, Pennsylvania. Counts VII and X contain the same substantive allegations of negligent hiring, retention, and entrustment, cast under a joint enterprise theory. See Miller v. Query, 201 Va. 193, 197, 110 S.E.2d 198, 201 (1959). With respect to the negligent hiring, retention, and entrustment claims (Counts VI, VII, IX, and X), Milne alleges that Western Express and FedEx Ground "knew or should have known that MFT and Flores had histories of non-compliance with safe driving practices, the Federal Motor Carrier Safety Regulations, and other trucking regulations, trucking industry standards, and other violations," Second Am. Compl., ECF No. 67, at ¶¶ 174, 252; "knew or should have known that Defendant MFT and Defendant Flores had a history of unsafe driving, motor carrier, and/or trucking practices," id. at ¶¶ 175, 253; and "knew or should have known that defendant MFT was an inexperienced, non-rated motor carrier with limited experience and financially impaired," id. at ¶¶ 177, 254.

Western Express and FedEx Ground seeks dismissal of all claims against them on three substantive grounds. First, they argue that as the shipper and broker of the freight hauled by Flores, they are not subject to personal jurisdiction in the Western District of Virginia. Second, they argue that the SAC fails to state a claim for negligence in hiring MFT and Flores. Third, they argue that tort claims against them, as shipper and broker, are preempted by federal law. Separately, these defendants ask the court to dismiss Count XIV, through which Milne requests punitive damages.

8

## A.

Western Express and FedEx Ground seek dismissal for lack of personal jurisdiction. Western Express and FedEx Ground argue that Milne has not alleged facts sufficient to establish personal jurisdiction over them as the mere broker and shipper of the freight being hauled by MFT and Flores. Milne responds that Counts V and VIII allege that Flores was an employee of Western Express and FedEx Ground, and that he was acting in the scope of his employment when he parked the tractor-trailer on the shoulder of Interstate 81 in Montgomery County, Virginia. Milne further argues that the trailer hit by the 2015 Ford Explorer driven by Lopez was a FedEx Ground trailer, Tr., ECF No. 61, at 40, and that the SAC alleges that both Western Express and FedEx Ground "had control over the time, manner, and method of how Defendant MFT and/or Defendant Flores were to pick up and deliver the Subject Load." Second Am. Compl., ECF No. 67, at ¶ 72. The SAC also alleges that Western Express and FedEx Ground required MFT and Flores to check in during the delivery process and provide tracking updates. Id. at ¶¶ 74–80.

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). However, where, as here, the court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. Id. (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "The court, in deciding whether

9

a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Brooks v. Motsenbocker Advanced Devs., Inc., 242 F. App'x. 889, 890 (4th Cir. 2007). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." Reynolds Foil, Inc. v. Pai, No. 3:09-cv-657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 477–78 (1985)). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." Id.

The court employs the traditional two-step analysis to resolve the personal jurisdiction dispute at issue. Therefore, the court must first decide whether Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, permits the court to exercise personal jurisdiction over the defendants, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997) ("[O]ur inquiry into the federal court's jurisdiction . . . incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states."). Virginia's long-arm statute extends personal jurisdiction to the extent permitted by due process, and therefore "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996)). The inquiry becomes whether the defendants maintain sufficient minimum

contacts with the forum state so as not to offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." Carefirst, 334 F.3d at 397. "If the defendant's contacts with the [s]tate are also the basis for the suit, those contacts may establish specific jurisdiction . . . . [I]f the defendant's contacts with the [s]tate are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the [s]tate." ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

On the issue of personal jurisdiction, the positions of the parties are akin to trucks passing in the night, with Western Express and FedEx Ground arguing that they had no involvement with the Western District of Virginia and were merely the shipper and broker of the freight being hauled by Flores. In stark contrast, Milne alleges that Western Express and FedEx Ground employed Flores and controlled his activities.

Given the allegations in the SAC that Western Express and FedEx Ground employed Flores and controlled his activities, the issue of personal jurisdiction requires factual development. The court will deny the motion to dismiss for lack of personal jurisdiction as to Western Express and FedEx Ground without prejudice to their ability to raise this issue under Fed. R. Civ. P. 56 following completion of a period of limited discovery. The court will allow the parties to take discovery relevant to the issue of personal jurisdiction until May 20, 2024,

11

after which Western Express and FedEx Ground may raise these issues by means of a Rule 56 motion.

## B.

Western Express and FedEx Ground seek dismissal of all negligence claims against them, whether under a respondeat superior or negligent hiring or retention theory, by arguing that they served only as shipper and broker, not as motor carrier. These defendants insist that Flores was neither their employee nor an independent contractor working on their behalf. They also contend that MFT, not Western Express or FedEx Ground, was the motor carrier responsible for Flores' actions.

A claim for negligent hiring of an independent contractor requires a showing of (1) physical harm to a third party, (2) caused by failure to exercise reasonable care to employ a competent and careful contractor, (3) to work which involves risk of physical harm unless it is skillfully and carefully done. Philip Morris, Inc. v. Emerson, 235 Va. 380, 399, 368 S.E.2d 268, 278 (1988) (citing Restatement of Torts § 411 (2d ed., 1965)). Milne has alleged physical harm by way of Landaverde's traumatic brain injury, satisfying the first element. The third element is satisfied as "the operation of a tractor-trailer on a public highway involves just such a risk of physical harm." Jones v. C.H. Robinson Worldwide, Inc., 558 F. Supp.2d 630, 642 (W.D. Va. 2008). While the facts as to the second element are disputed, at this stage the allegations are sufficient to state a plausible claim. See Turner v. Syfan Logistics, Inc., No. 5:15cv81, 2016 WL 1559176 at *10 (W.D. Va. April 18, 2016); McKeown v. Rahim, 446 F. Supp. 3d 69, 86 (W.D. Va. 2020); Jones v. D'Souza, No. 7:06cv00547, 2007 WL 2688332, at *5 (W.D. Va. Sept. 11, 2007).

12

Milne has alleged sufficient facts to plausibly state the claims he sets out in Counts V–X. He expressly alleges in Counts V and VIII that Western Express and FedEx Ground employed Flores and that his action in parking the tractor-trailer on the shoulder of Interstate 81 was within the scope of his employment. Likewise, in Counts VI, VII, IX, and X, Milne alleges that Western Express and FedEx Ground "knew or should have known that MFT and Flores had histories of non-compliance with safe driving practices, the Federal Motor Carrier Safety Regulations, and other trucking regulations, trucking industry standards, and other violations," Second Am. Compl., ECF No. 67, at ¶¶ 174, 252; "knew or should have known that Defendant MFT and Defendant Flores had a history of unsafe driving, motor carrier, and/or trucking practices," id. at ¶¶ 175, 253; "knew or should have known that defendant MFT was an inexperienced, non-rated motor carrier with limited experience and financially impaired," id. at ¶¶ 177, 254. At this early stage in the proceeding, these claims survive.

## C.

Western Express and FedEx Ground argue that the Federal Aviation Administration Authorization Act ("FAAAA") expressly preempts state negligence claims against motor carriers and brokers.

The FAAAA preempts state law "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The statute contains a safety exception, which excludes from preemption "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). As pertinent here, the FAAAA defines a motor carrier as "a person providing motor vehicle transportation for compensation," 49 U.S.C.

13

§ 13102(14), and a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). The Supreme Court has explained that, in the context of a claim against a motor carrier, the preemption clause applies only to state law that relates to (1) the price, route, or service of a motor carrier and (2) the transportation of property. Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 261 (2013).

The question is two-fold: whether § 14501(c)(1) preempts state law negligence claims and, if so, whether such claims fall within the safety exclusion in § 14501(c)(2)(A). As the parties discussed at argument, a circuit split exists on this very issue. In Miller v. C.H. Robinson Worldwide, Inc., the Ninth Circuit held that while "there is no question that common-law claims are within the scope of the preemption clause," 976 F.3d 1016, 1025 (9th Cir. 2020), the safety exclusion controlled because "'the safety regulatory authority of a State' encompasses common-law tort claims," id. at 1026 (quoting 49 U.S.C. § 14501(c)(2)(A)), cert. denied, 142 S. Ct. 2866 (2022) (mem). As to the preemption provision, the court explained that "a claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a connection with broker services." Id. at 1024. And a negligence claim, the court continued, "demands that an individual or entity exercise ordinary care," thus imposing such an obligation. Id. at 1025. However, the court observed that, through the FAAAA, Congress intended to regulate "economic aspects of the trucking industry . . . not restrict the States' existing power over safety," a power that "plainly includes

14

the ability to regulate safety through common-law tort claims." Id. at 1026 (emphasis in original) (quotations omitted). Thus, the Ninth Circuit held that state law negligence claims are shielded from preemption via the safety exclusion.[6]

By contrast, the Seventh Circuit in Ye v. GlobalTranz Enterprises, Inc. found that the safety exclusion does not preserve common-law negligence claims against brokers. 74 F.4th 453, 460 (7th Cir. 2023), cert. denied, No. 23-475, 2024 WL 72005 (Jan. 8, 2024). As in Miller, the Ye court found that the FAAAA preempted a wrongful death claim against a broker for the negligent selection of a motor carrier. Id. at 458. Unlike Miller, however, the Seventh Circuit determined that "only those laws with a direct link to motor vehicles fall within a state's 'safety regulatory authority . . . with respect to motor vehicles.'" Id. at 463–64 (quoting 49 U.S.C. § 14501(c)(2)(A)). The Ye court justified its divergence from Miller by taking issue with the Ninth Circuit's reliance on congressional purpose, a presumption against preemption, and a broad interpretation of the phrase, "with respect to," as it appears in the safety exclusion. Id. at 465. The Ye court concluded that the safety exclusion did not shield the negligence claim against the broker from preemption.[7]

---

[6] The Ninth Circuit later suggested that Miller may have run counter to the Supreme Court's teaching that "if a 'statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" R.J. Reynolds Tobacco Co. v. Cnty. of L.A., 29 F.4th 542, 553 (9th Cir. 2022) (quoting Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016)). However, the court did not modify Miller's ultimate conclusion that the FAAAA's safety exclusion protects common-law negligence claims from preemption.

[7] The Ye court also made reference to the Eleventh Circuit's decision in Aspen Am. Ins. Co. v. Landstar Ranger, Inc., where the court found that the safety exclusion did not shield a negligent hiring claim from preemption. 65 F.4th 1261, 1270–72. However, the negligent hiring claim in Aspen is readily distinguishable from the claims at issue in Miller, Ye, and this case because the negligent selection claim in Aspen arose from theft—a broker gave the plaintiff's cargo to a purported motor carrier for transport, which instead stole and made off with the plaintiff's cargo. Id. at 1264–65. A negligent selection claim based on conversion has a significantly more tenuous relationship to a state's safety regulatory authority with respect to motor vehicles than negligent selection claims based on wrongful death and serious bodily injury, as was the case in Miller and Ye and as is the case here.

15

The Fourth Circuit has not opined on this issue, but district courts therein have found that § 14501(c)(1) does not preempt state law negligence claims against brokers. In <u>Mann v. C. H. Robinson Worldwide, Inc.</u>, the court found that the preemption provision did not apply to a personal injury claim against a broker because the claim "does not have anything more than a 'tenuous, remote, or peripheral' connection to the 'price, route, or service' of a broker." No. 7:16-CV-00102, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017) (Dillon, J.) (quoting <u>Rowe v. New Hampshire Motor Transport Ass'n</u>, 552 U.S. 364, 371 (2008)). Writing before <u>Miller</u> and <u>Ye</u>, the <u>Mann</u> court reasoned that a negligent hire claim against a broker based on personal injury "reflect[ed] an attempt by members of the driving public to recover for a broker's alleged negligence." <u>Id.</u> The court also determined that "even if the state's negligent hiring claim had a sufficient impact on the price, route, or service of a broker to" be subject to the preemption provision, "it would fall within the general 'safety regulatory' exception." <u>Id.</u> at *8.

District courts across the Fourth Circuit have followed <u>Mann</u> in concluding that negligence claims against brokers based on personal injuries are outside the scope of the preemption provision or shielded by the safety exclusion. See <u>Ortiz v. Ben Strong Trucking, Inc.</u>, 624 F. Supp. 3d 567, 583–84 (D. Md. 2022) (citing <u>Mann</u>, 2017 WL 3191516, at *7; <u>Gilley v. C.H. Robinson Worldwide, Inc.</u>, No. 1:18-00536, 2019 WL 1410902, at *3–5 (S.D.W. Va. Mar. 28, 2019); <u>Vitek v. Freightquote.com, Inc.</u>, No. JKB-20-274, 2020 WL 1986427, at *2–4 (D. Md. Apr. 27, 2020)). The court in <u>Ortiz</u> explained the improvidence of preemption in the personal injury setting:

> The court will not limit valid safety rationales to those concerned only with the safe physical operation of motor vehicles but will

16

> understand the exception to reach regulations that are genuinely responsive to the safety of other vehicles and individuals.

Id. at 584 (citing Miller, 976 F.3d at 1030–31). This court agrees that, regardless of whether the preemption provision covers Milne's negligence claims against FedEx Ground and Western Express, the safety exclusion shields such claims from preemption because they fall squarely within the "safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). State law recognizes these tort claims in part to incentivize safe practices in the trucking industry. To preempt such claims would undercut an important tool in the states' efforts to maintain reasonably safe roadways, a practice expressly shielded by the safety exclusion. Accordingly, the court declines to dismiss Milne's claims against FedEx Ground and Western Express based on FAAAA preemption grounds.

### D.

Western Express and FedEx Ground assert that the court should dismiss the request for punitive damages in Count XIV. As an initial matter, "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)." Rathbone v. Haywood Cnty., No. 1:08CV117, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008). "A plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." Janis v. Nelson, No. CR. 09-5019-KES, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009) (citations omitted); Fed. R. Civ. P. 12(b)(6) (permitting party to raise the defense of "failure to state a claim upon which relief can be granted" by motion). Because "a demand for relief is not part of a plaintiff's statement of the claim," Alexander v. Se. Wholesale Corp., No. 2:13CV213, 2013 WL 5673311, at *8 n.7 (E.D. Va. Oct. 17, 2013) (citing Bontkowski v. Smith, 305 F.3d 757, 762 (7th Cir. 2002)), the nature of the relief sought is immaterial to the question of

17

whether a complaint adequately states a claim upon which relief can be granted, see Int'l Fid. Ins. Co. v. Mahogany, Inc., No. CIV. JKB-11-1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011) (citing Charles Alan Wright, et al., 5 Federal Practice And Procedure § 1255 (3rd ed. 1993)). Accord Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 3d 629, 631-32 (W.D. Va. 2014); Debord v. Grasham, No. 1:14cv039, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014); Downs v. Winchester Med. Ctr., 21 F. Supp. 3d 615, 620 (W.D. Va. 2014); Meeks v. Embiata, No. 7:14cv534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015).

"[Rule] 54 underscores the impropriety of dismissing requests for punitive damages under [Rule] 12(b)(6)." Oppenheimer v. Sw. Airlines Co., No. 13-CV-260-IEG BGS, 2013 WL 3149483, at *4 n.1 (S.D. Cal. June 17, 2013). Because Rule 54(c) directs courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," it "makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint." Id. at *4 n.1 (citations omitted); Fed. R. Civ. P. 54(c).

Thus, the motion to dismiss Milne's claim for punitive damages is premature and will be denied without prejudice.

## V.

In sum, the court **GRANTS** Lopez-Alberto's motion to dismiss Count XIII for failure to plead facts sufficient to establish a plausible claim for negligent entrustment; **GRANTS** MFT's motion to dismiss Count IV for failure to plead facts sufficient to establish a plausible claim for negligent hiring, retention, and entrustment; **DENIES** Western Express' and FedEx Ground's motions to dismiss Counts V, VI, VII, VIII, IX, and X based on the plausible

sufficiency of the facts alleged by Milne; and **DENIES** Western Express and FedEx Ground's motion to dismiss Count XIV without prejudice.

On the issue of personal jurisdiction as to Western Express and FedEx Ground, the court **ORDERS** a ninety-day period of jurisdictional discovery, closing on May 20, 2024, to develop facts regarding the relationship of Western Express, FedEx Ground, MFT, and Flores so that the court can assess the personal jurisdiction defense raised by Western Express and FedEx Ground.

An appropriate Order will be entered.

Entered: February 20, 2024

Michael F. Urbanski
Chief United States District Judge